THE CITY OF EAST ST. LOUIS, Appellee, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed February 19, 1909.*

1. SPECIAL ASSESSMENTS—*what questions are to be submitted to the jury.* The questions to be submitted to a jury in a special assessment proceeding are whether the property is assessed more than it is benefited and whether it is assessed more than its proportionate share of the cost of the improvement.

2. SAME—*how objector's assessment compares with assessment on certain other property is not a proper inquiry.* In a special assessment proceeding the proper inquiry of a witness is what proportion the assessment on the objector's property bears to the assessment imposed on the other lots and lands assessed, and not how it compares with the assessment on any specified lot or parcel of land; and the mere fact that all the lands assessed are owned by two parties does not change the rule.

3. SAME—*what is not proper proof of fact that railroad track is to be removed from street.* If a city has provided, by ordinance and by arrangement with a railroad company, that a railroad track shall be removed from the street when the proposed pavement is laid, such fact should be proved by the ordinance and records, and not by the testimony of an employee of the railroad that the company is to take up the track; and if this testimony is based merely upon future and conjectural plans of the railroad company, it is too remote and conjectural to be admissible to meet the claim of an objector that the presence of the track in the street should be considered upon the question of benefits.

4. SPECIAL TAXATION—*all distinctions between special assessment and special taxation are not abolished.* All distinctions between special assessment and special taxation under the Local Improvement act are not abolished by section 35 of such act, and if a special tax is levied according to frontage it is valid if it is within the limits of benefits conferred, even though the distribution of costs as between lots is not on a basis of proportionate shares.

APPEAL from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

KRAMER, KRAMER & CAMPBELL, (JOHN G. DRENNAN, of counsel,) for appellant.

D. E. KEEFE, Corporation Counsel, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a proceeding under the Local Improvement act of 1897 to pave Church avenue, in the city of East St. Louis, with granite blocks, a distance of 720 feet, beginning at Front street and running west. The evidence shows that all the property immediately adjoining Church avenue on the south and in front of which the proposed pavement is to be placed is owned by the Mobile and Ohio Railroad Company, which also owns 150 feet frontage immediately adjoining the proposed improvement on the north side of Church avenue, and that the balance of the frontage on the north side of Church avenue,—that is, 570 feet,—is owned by appellant. The cost of the entire improvement is estimated at $16,200, and it was assessed against the property contiguous to the proposed improvement, each front foot being assessed the same amount throughout, approximately $11.24 per front foot, regardless of the depth of the property assessed. The proposed improvement is in that part of the city used almost exclusively for railroad freight depots. The land in question owned by the Mobile and Ohio Railroad Company is all improved, while that of the Illinois Central, all unimproved, is low, wet ground, some seven or eight feet below the grade of the street pavement. Legal objections were filed as to appellant's property and overruled by the trial court. A jury was then called and the questions submitted to them whether the property was benefited the amount assessed and whether it was assessed more than its proportionate share. The jury found against appellant's contention, and a motion for new trial having been overruled, judgment was entered confirming the assessment. From that judgment an appeal has been prayed to this court.

The only questions urged here were raised on the trial before the jury,—that the property of appellant was as-

sessed more than its proportionate share, and that the court committed reversible error in the admission of evidence.

The case was tried in the court below, and is presented in the briefs here, as if it were a proceeding to pave this street by special assessment under the Local Improvement act, while the ordinance clearly provides that the improvement should be paid for by special taxation of contiguous property, under section 35 of the Local Improvement act. (Hurd's Stat. 1908, p. 431.) The preamble of the ordinance states: "Whereas, the said board of local improvements of said city has originated a scheme for and ordered the making of said improvement, the cost thereof to be paid by special taxation of contiguous property," etc. Section 8 of said ordinance provides, among other things, that the cost of said improvement "shall be paid by special taxation of the lots, blocks * * * and contiguous property abutting or fronting on said Church avenue. * * * Said special tax shall be levied and assessed on said lots * * * and contiguous property in proportion to their abuttage or frontage," etc. The report of the local improvement board, upon which this ordinance was based and which is attached and made a part of the proceedings, calls it "a special tax" and "special taxation of contiguous property."

Without question the proceedings before the board of local improvements and the ordinance as passed must be considered as requiring the improvement to be made by a special tax on contiguous property under said section 35, and not by a special assessment, properly so-called, as the term is used in the Local Improvement act. The petition, however, filed in the city court calls it a special assessment for a local improvement, and the commissioner appointed to spread the assessment calls it in his report accompanying the roll, at one place a "special assessment by special taxation of contiguous property," and at another place a special tax to pay the cost of said improvement. It is evident, however, that in making the roll and spreading the assess-

ment he considered that he was acting under a proceeding to levy a special assessment and not a special tax, for he takes into consideration and reports upon the proportionate cost of the improvement that should be paid by the city and by the property. Under a special tax proceeding the city council has the sole power to determine what proportion of said special tax levied to pay for the improvement shall be borne by the city, and this question cannot be reviewed by the courts, (*City of Peru* v. *Bartels*, 214 Ill. 515; *Birket* v. *City of Peoria*, 185 id. 369;) while in a special assessment proceeding the commissioner decides those proportionate shares, and his decision can be reviewed by the trial court. Local Improvement act, secs. 39, 47; Hurd's Stat. 1908, pp. 431, 434; *Graham* v. *City of Chicago*, 187 Ill. 411.

"Special taxation, as spoken of in our constitution, is based upon the supposed benefit to the contiguous property and differs from special assessments only in the mode of ascertaining the benefits. In the case of special taxation, the imposition of the tax by the corporate authorities is of itself a determination that the benefits to the contiguous property will be as great as the burden of the expense of the improvement, and that such benefits will be so nearly limited, or confined in their effect, to contiguous property, that no serious injustice will be done by imposing the whole expense upon such property. In the case of special assessments the property to be benefited must be ascertained by careful investigation, and the burden must be distributed according to the carefully ascertained proportion in which each part thereof will be beneficially affected." *Craw* v. *Village of Tolono*, 96 Ill. 255.

Under section 17 of article 9 of the act incorporating cities and villages, as passed in 1872, it was provided that the city council had power to determine conclusively for itself the question of benefits under special taxes and to levy that tax accordingly. In 1895 said section 17 was

amended so as to read substantially the same as section 35 of the Local Improvement act of 1897. This section as thus changed does not abolish all distinctions between special taxation and special assessments, but merely limits the amount which may be assessed against any lot or tract of land to the amount which it will be benefited by the improvement. The power to settle conclusively the question of benefits was thereby taken from the city council and committed to the court, to be tried by jury. *Hull* v. *People,* 170 Ill. 246; *Pfeiffer* v. *People,* 170 id. 347.

Where an improvement has been made by special assessment it is to be levied upon all the property to be benefited, in proportion to the benefits, and the question of the proportionate share of each lot as compared with the total cost is a proper subject for inquiry before a jury. If, however, a special tax is levied according to frontage, even though the distribution of costs as between different lots is not on a basis of proportionate shares, still the tax is valid if within the limits of benefits conferred. As was said in *City of Peru* v. *Bartels, supra,* on page 519: "There may be a very great difference in the benefits to different lots having the same frontage, on account of one lot being near a business center, with valuable improvements and devoted to business purposes, while the other is vacant or of much less value, or where one lot is of much greater depth than the other, and yet a special tax on each, according to frontage, may be no more than the benefits derived from the improvement. A special tax according to frontage is authorized by the statute, and if the tax does not exceed the benefits it is valid." It was held in that case that the court erred in permitting the objections raising the question of proportionate shares to be submitted to the jury.

It is very evident that not only the papers filed herein failed to distinguish properly between special tax and special assessment proceedings, but that the trial of the cause itself in the lower court was conducted as if this were a

special assessment and not a special tax proceeding, as the ordinance required.

While said section 35 of the Local Improvement act says that the special tax shall be levied and assessed as nearly as may be in the manner provided for making, assessing and collecting special assessments, still it is clear from the decisions of this court heretofore referred to, that there are some radical differences in the method of levying a special tax and levying special assessments. The petition filed in the city court and the report of the special commissioner accompanying the roll showed plainly that a special assessment was attempted to be levied, while the ordinance,—the basis of the proceedings,—provided for a special tax on contiguous property. If the objection had been made in the trial court that the petition and assessment roll did not follow the ordinance it would necessarily have been sustained and the petition dismissed. Even if it be admitted, however, that this point was waived because not raised in the trial court, (which we do not decide,) the cause must be reversed for errors in the admission of evidence. If this objection was waived, then it must be assumed that the cause should have been, as it was, tried as a special assessment. Under a special assessment proceeding there are two issues to be submitted to the jury: one, was the property assessed more than it was benefited; and the other, was it assessed more than its proportionate share of the cost of the improvement. Counsel for appellee repeatedly asked witnesses what would be the fair and just proportion that the property of appellant should bear to a like number of feet of frontage on the other side of the street, and the witnesses were allowed to answer this question over the objection and exception of the appellant. This court has held a number of times that the proper inquiry of a witness is what proportion the assessment on a given piece of land bears to the assessment imposed on all the other lots and land in the assessment, and not how it compares with the assessment

on any specified lot or portion of land in said assessment. (*Clark* v. *City of Chicago,* 166 Ill. 84, and cases cited; *City of Peoria* v. *Smith,* 232 id. 561.) The mere fact that all the property in this proposed improvement was owned by two parties does not change this rule. This comparison of the benefits as to one foot of frontage on one side of the street with the benefit to one foot of frontage on the other may have been very detrimental to appellant with the jury, as the record shows that most of the property of appellant was only thirty feet in depth, while the record does not show the depth of the property of the Mobile and Ohio Railroad Company. If it were a special tax proceeding and the hearing as to the benefits was before a jury the depth or comparative depth of the frontage assessed might be immaterial, but if this be a special assessment proceeding then the depth of the property might have much to do with the benefit or proportionate benefit to be derived from the improvement. *City of Peru* v. *Bartels, supra.*

It also appears that at the time of the hearing in the court below there was a railroad track belonging to the Mobile and Ohio Railroad Company occupying, under the authority of a proper ordinance, the center of said Church street throughout the entire distance of the proposed improvement, and that appellant attempted to show that this ought to make a difference in the amount of benefits to the Mobile and Ohio railroad property as compared with the benefits to property of appellant, which would not have a right to use this railroad track. To meet this contention one of the employees of the Mobile and Ohio Railroad Company was asked if there "were any plans and arrangements to take that track out of that street permanently." Over the objection and exception of appellant he was allowed to answer that the track was to come out when the street was made. This was not the proper way to make such proof, whether the hearing was a special tax or a special assessment proceeding. If the city had provided by

ordinance and by an arrangement with the railroad company to take up the track, proof of that fact should have been made by the ordinance and records. If this evidence was based on future and conjectural plans of the railroad company then it was too speculative and doubtful to predicate a benefit upon. *Gordon* v. *City of Chicago,* 201 Ill. 623; *Holdom* v. *City of Chicago,* 169 id. 109.

The judgment of the city court will be reversed and the cause remanded.                                *Reversed and remanded.*