THE CITY OF CHICAGO, Appellant, *vs.* KATHERINE D. ARNOLD *et al.*——(LUCIUS G. FISHER *et al.* Appellees.)

*Opinion filed December 17, 1913.*

1. SPECIAL ASSESSMENTS—*valid ordinance is the foundation of every special assessment.* The foundation of every special assessment is a valid ordinance specifically describing the nature, character and locality of the proposed improvement, and no valid assessment can be based upon an ordinance which omits from its terms essential features of the proposed improvement.

2. SAME—*when condemnation ordinance is unreasonable.* An ordinance to condemn a strip fifty feet wide on each side of a street for the purpose of widening the street, which already has a newly-laid asphalt pavement with cement curbs and gutters and eight-foot cement sidewalks, and to pay for the improvement by

special assessment, is unreasonable and oppressive, where there is nothing in the ordinance to show what is to be done with such pavement or sidewalks or what will be done with the strips to be acquired by the condemnation, except that the commissioner of public works shall remove the buildings and put the surface of the ground "in such condition that it can be used for public travel, said work to be paid for out of the general fund" of the city.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

PHILIP J. McKENNA, and GEORGE P. FOSTER, (WILLIAM H. SEXTON, Corporation Counsel, of counsel) for appellant.

WILLIAM GARNETT, for appellee Lucius G. Fisher.

BENTLEY, BURLING & SWAN, for appellees John F. Bass and others.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Cook county sustaining certain legal objections and dismissing a petition for condemnation to widen Stony Island avenue from East Sixty-seventh street to East Sixty-ninth place extended, in the city of Chicago, the proposed improvement to be paid for by special assessment.

Stony Island avenue north of Sixty-seventh street is 66 feet wide, forming the western boundary of Jackson Park. At Sixty-seventh street (the southern boundary of Jackson Park) it is now 100 feet wide, continuing at that width to Sixty-ninth street, where it is 150 feet wide for a distance of 300 feet south to Sixty-ninth place, and from thence south it is 200 feet wide. There is a street car track running north and south in the center of the street, and the street is paved on the west side from Sixty-seventh street to Sixty-ninth street and from Sixty-seventh street to Sixty-ninth place on the east side. Where the street

broadens out to the south the two paved portions of the street follow its outer boundaries on their respective sides, there being a parkway on each side of the car track, between said track and the pavement. The following plat will show approximately the condition of the street in said locality as it existed when said condemnation ordinance was passed:

The ordinance provided that "Stony Island avenue be widened from East Sixty-seventh street to East Sixty-

ninth place produced from the west," by condemning a strip 50 feet wide and about 1200 feet long on the west side of Stony Island avenue from Sixty-seventh street south to Sixty-ninth street, and a similar strip on the east side of the same street about 1500 feet long, from Sixty-seventh street to Sixty-ninth place. The ordinance further provided that "any building or other obstructions which may be located upon said land shall be removed by the commissioner of public works, and said commissioner shall put the surface of said proposed street in such condition that it can be used for public travel, said work to be paid for out of the general fund of said city of Chicago."

The evidence shows, without controversy, that Stony Island avenue from Sixty-seventh street to Sixty-ninth street on the west and to Sixty-ninth place on the east is paved with asphalt pavement laid in the spring of 1910, together with cement sidewalks, cement curbs, sewers and all connections of house drains and catch-basins, and the usual improvements which go into streets, all of these being in first-class condition. The cost of the pavement was about $40,000. The property owners still owe for future installments of this improvement approximately two-fifths of the amount assessed against such property. Nothing is said in the condemnation ordinance as to whether the pavement, curb and gutter and sidewalks are to remain after the street is widened or are to be torn up. The only possible provision in the ordinance referring to this is the one quoted above, wherein it is stated that the commissioner of public works "shall put the surface of the proposed street in such condition that it can be used for public travel." Do the words "proposed street" mean the entire street after it is widened or only the two 50-foot strips on either side of the present pavement? If the former, does this ordinance give authority to the commissioner of public works to tear up the pavement and sidewalks? If so, in what condition shall it be placed by him so that it can be used thereafter

261 — 10

for travel? Can he put in a dirt road or shall it be asphalt pavement? If this ordinance be construed to mean that he is to leave the present pavement in, is he to tear up the sidewalks, and what is to be done as to paving the 50-foot strip condemned on each side? It is conceded on both sides that the foundation of every special assessment must be a valid ordinance, specifically describing the nature, character and locality of the proposed improvement, and that no valid assessment can be based upon an ordinance which omits from its terms essential features of the proposed improvement. It is impossible to tell with any reasonable certainty from this ordinance in what condition it is proposed to leave the pavement for the widened street, and as to what part of such widened street, under this ordinance, the commissioner can exercise his authority to put the surface in condition for travel.

Counsel for the city admit that if this ordinance be construed to give the power to the commissioner of public works to tear up the asphalt pavement which is now in place and put down another pavement of any kind, the ordinance would be invalid as containing an unreasonable delegation of power to such official, but they insist that this ordinance, fairly construed, means that the present pavement and sidewalks are to remain as they are, and that the commissioner only has power to move the buildings from the 50-foot strips condemned and put those 50-foot strips in such condition that they can be used for public travel; that while the other construction of the ordinance is possible, the one they contend for is just as reasonable, and when two constructions of an ordinance are possible, one of which will render it invalid and the other of which will sustain it, the court will adopt that which sustains it. (*City of Park Ridge* v. *Wisner,* 253 Ill. 360, and cases cited.) Conceding, for the purposes of this case, that this rule of law would apply here, the construction thus placed upon the ordinance by counsel for the city would make it unrea-

sonable and oppressive. It is not contended by the city that there is to be any pavement put in on the 50-foot strips condemned or any sidewalks laid along the new lot lines. Here is a newly-paved asphalt street, bordered by an eight-foot cement sidewalk, in front of city property,— pavement and sidewalk practically in perfect condition. The city is to acquire property apparently to straighten out the street and possibly to remove a jog between Sixty-ninth place and Sixty-ninth street, and move the property line 50 feet back of the present sidewalk and put a 50-foot dirt roadway between that sidewalk and the new property line of the lots. No drainage is to be provided to carry away storm water and no method of passage across this 50-foot strip from the sidewalk to the lots. The mere opening of a street, without improvement so as to make it available, would be of little practical benefit to property, but here, if the contention of the city be upheld, the property is to be left in such condition that instead of being benefited by the proposed improvement it would be greatly injured. The proof shows that the width of the present roadway furnishes all necessary means for street traffic at this point. Under the reasoning of this court in *Washington Ice Co.* v. *City of Chicago,* 147 Ill. 327, *Title Guarantee and Trust Co.* v. *City of Chicago,* 162 id. 505, *City of Waukegan* v. *Burnett,* 234 id. 460, and *South Park Comrs.* v. *Pearce,* 248 id. 578, the construction of this ordinance contended for by the city would make it unreasonable and oppressive. The circuit court rightly held the ordinance in question void and dismissed the petition to condemn thereunder.

The judgment of the circuit court will therefore be affirmed.

                                        *Judgment affirmed.*